IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH ANN SEE, )
)
    Plaintiff, )
)
    v. ) Civil Action No. 15-298
)
CAROLYN W. COLVIN, ACTING )
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant. )

O R D E R

AND NOW, this 23rd day of May, 2016, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 11), filed in the above-captioned matter on August 31, 2015,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 9), filed in the above-captioned matter on July 31, 2015,

IT IS HEREBY ORDERED that said Motion is GRANTED. Accordingly, this matter is hereby remanded to the Commissioner of Social Security ("Commissioner") for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.**     **Background**

On March 5, 2013, Plaintiff Deborah Ann See protectively filed a claim for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. On April 8, 2013, Plaintiff protectively filed a claim for Supplemental Security Income Benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq. Specifically, Plaintiff claimed that

1

she became disabled on March 22, 2013, due to short bowel syndrome, gallbladder removal, migraine headaches, abdominal pain, diarrhea, and back pain. (R. 232).

After being denied initially on August 15, 2013, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on August 19, 2014. (R. 29-44, 128, 129). In a decision dated September 12, 2014, the ALJ granted Plaintiff's request for benefits, but found the onset date to be nearly a year later than as alleged by Plaintiff. (R. 11-28). Plaintiff appealed this onset date finding, but the Appeals Council declined to review the ALJ's decision on January 13, 2015. (R. 1-6, 286-92). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "'single piece of evidence will not satisfy the substantiality test if the

[Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence— particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'" Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). If the claimant fails to show that his or her impairments are "severe," he or she is

ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. §§ 404.1520(d), 416.920(d). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. §§ 404.1520(e), 416.920(e), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. §§ 404.1520(g), 416.920(g). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. §§ 404.1523, 416.923.

## III. The ALJ's Decision

In the present case, the ALJ found that Plaintiff met the insured requirements of the Social Security Act through December 31, 2017. (R. 15). Accordingly, to be eligible for Disability Insurance Benefits, Plaintiff had to establish that she was disabled on or before that date. See 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101, .110, .131.

The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claim for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset of disability. (R. 17). The ALJ also found that Plaintiff met the second requirement of the process insofar as she had several severe impairments, specifically, status post laparotomies with colon resection, cholecystectomy, hernia repairs and lysis of adhesions, intractable diarrhea, low back pain, migraines, and GERD. (R. 18). The ALJ further concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 18).

The ALJ next found that Plaintiff became disabled on March 1, 2014, rather than on the alleged onset date of liability, March 22, 2013. (R. 18). The ALJ found that, prior to March 1, 2014, Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b); however, she could lift up to 20 pounds occasionally and 10 pounds frequently; she could never climb ladders, ropes, or scaffolds; and she had to avoid concentrated exposure to vibration and hazards such as unprotected heights. (R. 18-19). The ALJ also found that, beginning on March 1, 2014, Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a); however, she is limited to sitting for 2 hours, standing for 2 hours, and walking for 1 hour in an 8-hour day; she must alternate positions frequently; she cannot stoop, climb, crawl, or kneel; she is limited to occasional bending, crawling, or balancing; and she can occasionally lift up to 5 pounds. (R. 21-22).

At Step Four, the ALJ found that, prior to March 1, 2014, based on the RFC he found for that time period, Plaintiff was capable of performing her past relevant work. (R. 23). Noting that Plaintiff has past relevant work as a cleaner and a cashier, the ALJ further found that Plaintiff had worked at the substantial gainful activity level long enough to learn those jobs

within the past 15 years. (R. 23). Additionally, at the hearing, a vocational expert ("VE") testified that both cleaner and cashier positions are unskilled positions and that, given Plaintiff's RFC, Plaintiff could perform those jobs during that time. (R. 23, 42).

Next, the ALJ found that, beginning on March 1, 2014, Plaintiff's RFC has prevented her from being able to perform past relevant work, so he moved on to Step Five for that time period. (R. 23). Then, the ALJ found that, based on Plaintiff's age, education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 24). The ALJ noted that Plaintiff was an individual of advanced age on March 1, 2014, and the VE testified that Plaintiff does not have any transferable skills. (R. 23). Thus, the ALJ explained that, even if Plaintiff had the RFC for the full range of sedentary work, a finding of "disabled" is directed by Medical Vocational Rule 201.06, beginning March 1, 2014. (R. 24).

Accordingly, the ALJ found that Plaintiff was not disabled prior to March 1, 2014, but that Plaintiff became disabled on that date and has continued to be disabled through the date of her decision. (R. 24).

**IV.** **Legal Analysis**

Plaintiff raises several related arguments as to why she believes that the ALJ erred in formulating her RFC and in finding her to be not disabled for the period prior to March 1, 2014, and the Court agrees that remand is warranted in this case. Specifically, the Court finds that the ALJ failed to adequately explain her rationale in determining Plaintiff's RFC and in selecting March 1, 2014 as the disability onset date. Accordingly, the Court finds that the record is insufficient to support the ALJ's decision, and the Court will remand the case for further consideration.

RFC is defined as "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Fargnoli, 247 F.3d at 40 (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)); see also 20 C.F.R. §§ 404.1545(a), 416.945(a). "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011); see also 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c); SSR 96-5p, 1996 WL 374183 (July 2, 1996). In fact, an ALJ is not limited to choosing between competing opinions in the record, and may instead develop his own. See 20 C.F.R. §§ 404.1546(c), 416.946(c). Nevertheless, not only must an ALJ consider all relevant evidence in determining an individual's RFC, but the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

While it is not necessary to address all the points raised by Plaintiff in her brief, the Court agrees with Plaintiff's claim that the ALJ did not provide an adequate explanation for the consideration she gave to the medical opinion evidence of record in formulating her RFC for the period of time prior to March 1, 2014. First, as the ALJ points out, Elaine Gelb, M.D., opined in

a Return to Work Physical, dated February 15, 2013, that Plaintiff's "frequent watery diarrhea would interfere with a full workday and that she could not return to work." (R. 20, 568). In considering this opinion, the ALJ stated that Dr. Gelb "is not qualified to comment on the ultimate issue of disability, as it is an issue left to the Commissioner," and that Dr. Gelb's opinion is not consistent "with the medical evidence of record and [Plaintiff's] reported activities prior to March 1, 2014." (R. 20). The ALJ did not, however, provide any explanation as to how Dr. Gelb's opinion is inconsistent with the other evidence, nor is it clear how much weight, if any, she gave to that opinion in formulating Plaintiff's RFC. Instead, the ALJ simply included a long string cite listing various pages from the evidence of record, much of which does not actually support the ALJ's statement that Dr. Gelb's opinion is inconsistent with the other evidence of record.[1] (R. 20).

---

[1] In discussing the various medical opinions, the ALJ repeatedly cited to a long list of pages from the record, much of which does not, in fact, actually provide support for her various conclusions. For example, some of the evidence cited includes: a Function Report in which Plaintiff describes her various difficulties, including frequent trips to the bathroom and incontinence (R. 260-69, Ex. 5E); a list of Plaintiff's medications, including those for diarrhea, cramping and pain (R. 285, Ex. 11E); emergency room records dated 7/8/12 indicating a focal perforation and indicting she was to be "taken to the operating room as soon as possible" (R. 297, Ex. 1F); an operative report dated 7/8/12 explaining that part of Plaintiff's small bowel had been removed (R. 300, Ex. 1F/8); an emergency department record dated 8/22/12 indicating that Plaintiff was reporting diarrhea every time she eats, abdominal pain (cramps), etc. (R. 314, Ex. 2F/2); an emergency department record dated 10/25/12 noting that Plaintiff had presented for constant diarrhea since surgery (R. 335, Ex. 3F/2); a treatment note dated 8/30/12 detailing that Plaintiff had had diarrhea since her surgery (R. 388, Ex. 5F/25); a treatment note dated 3/22/13 stating that Plaintiff cannot work because diarrhea is disrupting her work (R. 404, Ex. 6F/2); Dr. Hahn's consultative examination report dated 7/31/13 (R. 423-37, Ex. 8F); a discharge summary after hospital admission from 9/24/13-9/27/13 with discharge diagnosis of abdominal adhesion status post lysis of adhesions and repair of hernia, abdominal pain, status post partial colectomy for perforated viscus and chronic low back pain (R. 449, 10F/7); a post-operative emergency department record dated 10/2/13 noting nausea, vomiting, diarrhea, moderate GI tenderness, decreased GI auscultation, and moderate distress (R. 510, Ex. 11F/48); an operative report dated 6/5/13 for EGD with biopsies conducted because of Plaintiff's abdominal pain, reflux and severe diarrhea (R. 550, Ex. 11F/88); an operative report dated 6/5/13 for a colonoscopy with random biopsies for right colecotomy and abdominal pain (R. 552, Ex. 11F/90); and Dr. Gelb's Return to

Next, the ALJ cited the opinion of consultative examiner Richard M. Hahn, M.D., who issued a disability evaluation for Plaintiff on July 31, 2013, finding that she "could lift and carry up to 10 pounds frequently and 20 pounds occasionally, sit for 8 hours at a time and 8 hours in an 8-hour day, stand for 1 hour at a time and for 2 hours in an 8-hour day and walk for 1 hour at a time and for 2 hours in an 8-hour day." (R. 21). Dr. Hahn also opined that Plaintiff could occasionally be exposed to unprotected heights and moving mechanical parts. (R. 21). The ALJ explained that he gave this opinion "little weight," stating that "the evidence of record and the opinion of the State Agency medical consultant show that [Plaintiff] is less limited than found by Dr. Hahn." (R. 21). Again, the ALJ did not actually explain her reasons for evaluating Dr. Hahn's opinion as she did, and to bolster her analysis, the ALJ included a list of nearly all the same evidence as that previously cited to refute Dr. Gelb's opinion. (R. 21). Here, too, much of the evidence the ALJ cited does not actually support her position. (R. 21).

The ALJ next noted that treating physician Wladyslaw Bobak, M.D., like Dr. Gelb, also opined that Plaintiff "could not work because of her diarrhea." (R. 21). Again, in response, the ALJ stated that "Dr. Bobak is not qualified to comment on the ultimate issue of disability," and that Dr. Bobak's opinion is conclusory and does not address specific functional limitations. (R. 21). The ALJ also stated that the opinion was given "little weight," but did not further explain her rejection thereof, which is especially odd in light of the substantial evidence overall regarding Plaintiff's diarrhea-related symptoms. Moreover, while Dr. Bobak's opinion may not bind the ALJ as to the ultimate finding of disability, again, the ALJ did not explain her decision to omit any limitations in Plaintiff's RFC to account for her diarrhea. Additionally, the ALJ noted that she gave "little weight" to Dr. Bobak's opinion from Plaintiff's immediate post-

---

Work Physical dated 2/15/13 which explained that Plaintiff's short bowel syndrome and frequent watery diarrhea would interfere with a full work day (R. 568, Ex. 11F/106).

operative period, in October, 2013, because it was from "the immediate postoperative period and does not represent long-term functional limitations." (R. 21, 448).

As for the opinion of Michael Lementowski, M.D., that Plaintiff could report to work without restrictions on September 18, 2012, the ALJ stated, again, that Dr. Lementowski is not qualified to comment on the ultimate issue of liability, and that "additional evidence available after his opinion shows that the claimant is more limited than found by Dr. Lementowski." (R. 21). Here, too, the ALJ listed the same string cite of evidence that she used to refute the other opinions which found Plaintiff to have greater limitations, as noted supra, and it is not clear to the Court how much weight, if any, the ALJ ultimately assigned to Dr. Lementowski's opinion in formulating Plaintiff's RFC.

Finally, the ALJ gave "great weight" to the opinion of state agency medical consultant Mary Ellen Wyszomierski, M.D., who opined, on August 14, 2013, that Plaintiff was limited to light work, but could never climb ladders, ropes or scaffolds and should avoid concentrated exposure to vibration and hazards. (R. 21). The ALJ explained that Dr. Wyszomierski's opinion is consistent with the evidence of record, but did not further explain her reasoning, other than listing the same string cite of evidence, much of which, the Court notes, does not necessarily support the opinion of Dr. Wyszomierski or the determination of the ALJ. (R. 21).

Accordingly, the Court finds that, although the ALJ acknowledged the opinions of the various physicians in her decision, her discussion of these opinions in conjunction with the other evidence of record was simply insufficient to permit meaningful review. Most notably, the Court is troubled that, although the ALJ included "intractable diarrhea" among Plaintiff's severe impairments, she declined to address that impairment in any way when discussing the medical opinion evidence in the record, and when formulating Plaintiff's RFC before (and even after)

March 1, 2014. Thus, based on the ALJ's superficial explanation and the evidence she cited to justify her determination (much of which does not actually support her conclusions), it is unclear to the Court how the ALJ ultimately evaluated those opinions and determined Plaintiff's RFC, and why she declined to include (or even to discuss) the doctors' concerns regarding Plaintiff's diarrhea.

The Court further finds that, while the ALJ's discussion of her weighing of the medical opinion evidence was somewhat perfunctory, she failed altogether to discuss her determination of the precise onset date of Plaintiff's disability. With regard to "Onset of Disability," Social Security Ruling 83-20 provides that, "[i]n determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available," and that, "[w]hen the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy." SSR 83-20, 1983 WL 31249, at *3 (1983). The Ruling specifically provides that the "[f]actors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence." Id. at *1; Neal v. Comm'r of Soc. Sec., 57 Fed. Appx. 976, 978 (3d Cir. 2003).

In the case at bar, however, the ALJ never explained in her decision what prompted her to choose March 1, 2014, as the disability onset date. Other than explaining that Plaintiff made an unsuccessful work attempt which ended prior to that date, on February 24, 2014, (and noting that, until that failed attempt—which was unsuccessful because Plaintiff had to make repeated trips to the bathroom due to her diarrhea—Plaintiff had apparently "believed" she could go back to work), nothing in the ALJ's opinion provides an indication as to why that particular date was chosen. (R. 17, 19). Thus, the Court cannot discern whether the ALJ's conclusion regarding the disability onset date is supported by the evidence because the ALJ did not specify what evidence

she relied upon in making that determination.[2] See, e.g., Neal v. Comm'r of Soc. Sec., 57 Fed. Appx. at 978 ("The district court properly found that the ALJ's determination, based upon the Plaintiff's testimony as to the onset of his symptoms, was supported by substantial evidence and in accordance with the Social Security Ruling.").

Therefore, while the ALJ ultimately rejected the various opinions limiting Plaintiff's ability to work (some of which were based on her intractable diarrhea), the ALJ's cursory explanation, along with the particular evidence she cited, does not allow the Court to determine the basis for those decisions, nor does it permit the Court to discern the reasons why the ALJ did not provide any limitations in her RFC concerning Plaintiff's diarrhea impairment. In fact, in failing to address this particular issue, it is not clear whether the ALJ chose to reject the need for any additional limitations, whether she felt that the RFC fully accounted for any limitations Plaintiff may have, or whether the omission of any such limitations was merely unintentional. While the ALJ was by no means required to adopt all of the findings of the various medical opinions, she was required to explain adequately her basis for rejecting them if she chose to do so. Thus, remand is required to allow for further discussion as to the ALJ's rationale in considering the medical opinion evidence in formulating Plaintiff's RFC, as well as the basis for the ALJ's determination of Plaintiff's disability onset date of March 1, 2014.[3]

---

[2] The Court also notes that the ALJ appears to have prevented Plaintiff from presenting testimony regarding her diarrhea at her hearing. In fact, when Plaintiff's attorney attempted to elicit testimony from Plaintiff regarding her bowel problems, which could have potentially shed additional light on her limitations, the ALJ interrupted, stating, "Well, I don't think she has to talk about that, Counsel. I see it in the record." (R. 37).

[3] The Court notes that, upon remand, the ALJ should, of course, ensure that proper weight be accorded to all the opinion and other evidence presented in the record, and she should verify that her conclusions concerning Plaintiff's RFC are adequately explained, in order to eliminate the need for any future remand.

12

## V. **Conclusion**

In short, the record simply does not permit the Court to determine whether the ALJ's determination of Plaintiff's RFC, or the determination of Plaintiff's disability onset date, is supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

s/Alan N. Bloch
United States District Judge

ecf: Counsel of record